# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00079-CV

**Jeanne N. Taylor, D.D.S., d/b/a Jeanne N. Taylor D.D.S., Individually, and on behalf of all others similarly situated, Appellant**

**v.**

**State Farm Lloyds, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN103375, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

Appellant Jeanne N. Taylor, D.D.S. appeals a district-court summary judgment dismissing her suit against appellee State Farm Lloyds, Inc. Taylor alleged in her suit that State Farm violated articles 5.06-1 and 5.06-3 of the Texas Insurance Code when it issued Taylor's business a multi-peril insurance policy with "hired and non-owned auto liability" coverage without providing personal injury protection ("PIP") or uninsured/underinsured motorist coverage ("UM/UIM"). *See* Tex. Ins. Code Ann. arts. 5.06-1, -3 (West 1981). State Farm moved for summary judgment, and Taylor moved for partial summary judgment. The district court granted State Farm's motion, and dismissed Taylor's case. We affirm the summary judgment in favor of State Farm.

**BACKGROUND**

Taylor purchased multi-peril insurance for her business from State Farm in 1993. At that time, multi-peril insurance policies were promulgated by the Texas Department of Insurance ("TDI"). Within that policy, State Farm offered limited non-owned auto liability insurance. Taylor purchased hired auto liability insurance as an endorsement to her multi-peril policy. In 1996, TDI allowed State Farm to write its own multi-peril policy subject to TDI's approval. At that time, State Farm issued hired and non-owned auto liability insurance as an endorsement to Taylor's multi-peril policy. None of the hired and non-owned auto liability coverage State Farm issued included PIP or UM/UIM coverage. Taylor contends that State Farm was required to issue PIP and UM/UIM coverage by the Texas Insurance Code. State Farm rejoins that TDI has the authority to regulate certain auto insurance by other provisions of the insurance code when TDI determines that it is appropriate. State Farm further asserts that TDI has chosen to regulate hired and non-owned auto coverage under the multi-peril subchapter of the insurance code rather than the auto liability subchapter, and therefore, PIP and UM/UIM coverages are not mandatory with regard to the hired and non-owned auto liability insurance that forms a limited part of the multi-peril insurance Taylor purchased for her business.

**STANDARD OF REVIEW**

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and

that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When the trial court grants one party's motion for summary judgment and denies the other, we review both motions and if we find the trial court erred, we will reverse and render the judgment the trial court should have rendered. *See Bradley v. State*, 990 S.W.2d 245, 247 (Tex. 1999).

## DISCUSSION

The issue presented is whether PIP and UM/UIM coverage is mandatory when an endorsement for hired and non-owned auto liability is added to a business's multi-peril insurance policy. When the district court granted State Farm's motion for summary judgment, it did not specify the grounds upon which it relied. Thus on appeal, Taylor argues that the district court erred in granting the summary judgment by questioning every possible ground advanced.[1] Taylor asks: (1) Did she have standing to seek declaratory relief?; (2) Did she have to exhaust administrative remedies before bringing suit?; (3) Is "hired and non-owned auto liability coverage" under this policy properly classified as "automobile liability coverage" subject to mandatory PIP and UM/UIM coverage?; (4) If "hired and non-owned auto liability coverage" is "automobile liability coverage," may TDI cancel or lessen coverage (PIP and UM/UIM) mandated by the legislature?; and (5) If TDI does have the authority to cancel or lessen mandated coverages, has it exercised any authority to do so?

---

[1] Grounds one and two would more properly be grounds for dismissal for lack of jurisdiction not summary judgment. We nevertheless address these jurisdictional issues raised by appellant.

3

**Does the court have subject matter jurisdiction?**

By Taylor's first issue she asks whether she has standing to bring this suit. We understand Taylor's question really to be whether the court has subject matter jurisdiction contingent on the "ripeness" of her suit. It is fairly clear that Taylor has standing—she is the appropriate person to bring the action. We will therefore address Taylor's jurisdictional question as to the "ripeness" of her suit. We hold that her suit is ripe for consideration.

Taylor sought a declaratory judgment in district court to determine whether State Farm had violated the Texas Insurance Code by issuing hired and non-owned auto liability insurance without providing PIP or UM/UIM coverage. The purpose of a declaratory judgment is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). However, the Uniform Declaratory Judgments Act ("UDJA") does not confer jurisdiction on a trial court but rather makes declaratory judgment available as a remedy for a cause of action already within the court's jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (holding that mere request for declaratory judgment does not establish jurisdiction); *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Thus, this Court must determine whether Taylor's request for declaratory relief is germane to a justiciable controversy already within the court's jurisdiction.

A justiciable controversy need not be "a fully ripened cause of action." *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.) (citing *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 760 (Tex. Civ. App.—Beaumont 1954, no writ)). However, the fact situation must manifest the "'ripening seeds of a controversy' . . . even though the

4

differences between the parties as to their legal rights have not reached the state of an actual controversy." *Ainsworth*, 271 S.W.2d at 761, *cited in Moore*, 985 S.W.2d at 154. In other words, there must either be a pending cause of action between the parties or such a clear indication of the extent of the parties' differences that a court may presume one is imminent.

In the present case, although Taylor has not filed a claim against State Farm on the hired and non-owned auto liability coverage in her multi-peril policy, she asserts that State Farm has already violated articles 5.06-1 and 5.06-3 of the insurance code by issuing automobile insurance without including PIP and UM/UIM coverage. *See* Tex. Ins. Code Ann. arts. 5.06-1, -3. The language of both articles suggests that if Taylor's understanding of the insurance code is accurate (that hired and non-owned auto liability coverage must be issued with PIP and UM/UIM coverage), State Farm has indeed already violated the statute and has thereby infringed Taylor's legal rights. Whether State Farm was required to issue hired and non-owned automobile insurance with PIP and UM/UIM coverage is a question of law that may be appropriately decided by Taylor's invocation of the UDJA. As such, Taylor's controversy is ripe for adjudication, and the court has subject matter jurisdiction to hear her case.

**Did Taylor have to exhaust administrative remedies?**

In her second issue, Taylor asks whether she was required to exhaust any administrative remedies before bringing her suit in district court. Requiring exhaustion of administrative remedies is a well-established doctrine, but it has numerous exceptions. Taylor did not file a formal complaint with TDI. However, when pure questions of law are involved, the doctrine of exhaustion of administrative remedies does not apply. *See Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986). In this case, the facts are undisputed and the question

before the trial court is a pure question of law—whether hired and non-owned auto liability insurance must be issued with PIP and UM/UIM coverage under the Texas Insurance Code. Concluding that Taylor did not need to exhaust her administrative remedies prior to raising this issue of law before the trial court, we agree that this could not form the basis for summary judgment.

**Did TDI have authority?**

In her third and fourth issues, Taylor asks whether hired and non-owned auto liability insurance is properly classified as "auto liability insurance" as contemplated by article 5, subchapter A of the insurance code, and, if so, whether PIP and UM/UIM coverage must be issued with hired and non-owned auto liability coverage. *See* Tex. Ins. Code Ann. art. 5 (West 1981). We conclude that hired and non-owned auto liability insurance is distinguishable from "auto liability insurance" as contemplated by article 5, subchapter A of the insurance code, and therefore State Farm need not provide PIP and UM/UIM coverage along with the hired and non-owned auto coverage in Taylor's multi-peril policy on her business.

We begin our analysis with rules of statutory construction. Determining legislative intent is the overriding goal of statutory interpretation. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex. 2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the legislature. Tex. Gov't Code Ann. § 311.011 (West 1998); *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000); *Tex. Workers' Comp. Comm'n v. Tex. Builders Ins. Co.*, 994 S.W.2d 902, 908 (Tex. App.—Austin 1999, pet. denied). Unless a statute is ambiguous, courts abide by the clear language of the statute and enforce it as written. *Republic Bank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985).

6

Statutes are interpreted by considering the entire statute, not just disputed provisions. *Thomas v. Cornyn*, 71 S.W.3d 473, 481 (Tex. App.—Austin 2002, no pet.). Disputed provisions are to be considered in context, not in isolation. *See Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). Courts consider such things as the circumstances under which the statute was enacted, former statutory provisions on the same or similar subjects, and the consequences of a particular construction when interpreting statutes. *Keng*, 23 S.W.3d at 349. We do not give one provision an interpretation that is inconsistent with the other provisions of the act. *Id.*

In the case at hand, Taylor's assertion that State Farm was required to issue PIP and UM/UIM coverage with her hired and non-owned auto liability endorsement relies on the following provisions of the insurance code:

> No automobile liability insurance policy . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured there under who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles . . . . ;
>
> No automobile liability insurance policy . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless personal injury protection is provided therein or supplemental thereto.

Tex. Ins. Code Ann. arts. 5.06-1, -3.

On the other hand, State Farm's conclusion that TDI has the authority to regulate certain auto insurance under other subchapters of the insurance code relies upon the following provision—found at the beginning of the subchapter dealing with automobile insurance:

7

> There shall be excluded from regulation under the provisions of this subchapter [subchapter A] any insurance against liability for damages arising out of the ownership, operation, maintenance or use of or against loss of or damage to motor vehicles . . . which may, in the judgment of the Board, be a type or class of insurance which is also the subject of or may be more properly regulated under the terms or provisions of other insurance rating laws . . . . If such a situation shall be found to exist, the Board shall make an order declaring which of said rating laws shall be applicable . . . .

*Id.* at art. 5.02.

Taking the provisions together and noting their relative placements within the subchapter dealing with automobile insurance, it is clear that article 5.02 grants TDI the discretion to except some kinds of auto insurance from subchapter A's mandatory PIP and UM/UIM coverage.

State Farm urges the Court to accept the *Sidelnik* decision as controlling the case before us. *Sidelnik v. American States Ins. Co.*, 914 S.W.2d 689 (Tex. App.—Austin 1996, writ denied). In *Sidelnik*, an umbrella insurance policy was at issue. Any auto coverage encompassed within that umbrella policy was *excess* to the primary insurance coverage the insured had to obtain before being issued the umbrella policy. *Id.* The facts at hand do not exactly fit the *Sidelnik* scenario. Although it is true, as a practical matter, that in most cases hired and non-owned auto coverage operates much like an excess policy—excess to the primary coverage owned by the user—there are situations in which the hired and non-owned auto policy could be the only, and thus primary, coverage. For that reason, *Sidelnik* does not control the question presented regarding this multi-peril policy.

Nevertheless, TDI has unambiguous authority under article 5.02 to exclude some auto insurance from the requirements of subchapter A when in its judgment it is a type of insurance "more properly regulated under the terms or provisions of other insurance rating laws." Tex. Ins.

8

Code Ann. art. 5.02. As discussed above, Taylor's hired and non-owned auto liability coverage was issued as an endorsement—a small part of her multi-peril business policy. Neither endorsement was rated based on the risk characteristics of the car or driver. And in fact, Taylor only paid $3.07 per $100 in anticipated annual rental expenses per year for her hired auto liability endorsement and approximately $4.00 a year for her non-owned auto liability endorsement. We reject Taylor's reading of articles 5.06-1 and 5.06-3 and overrule issues three and four.

**Did TDI exercise its authority?**

Having concluded that TDI does have the authority to remove hired and non-owned auto liability policies, such as Taylor's endorsement to a multi-peril policy, from the regulation of article 5, subchapter A, we address Taylor's fifth issue, asking whether TDI has *exercised* the authority to classify a multi-peril policy with hired and non-owned auto liability coverage under a different subchapter. We conclude that TDI has exercised its authority to do so.

Taylor argues that in the event TDI wanted to except hired and non-owned auto liability from subchapter A, it had to do so by an order that specifically invoked its authority to do so under article 5.02. We disagree. In 1992, TDI ordered that garage insurance, "including all coverages and endorsements included in the Texas Garage Policy, except for those coverages specifically rated on the basis of risk characteristics of the automobile or person driving," be regulated under the multi- peril subchapter of the insurance code. At that time, as well as today, hired auto liability insurance was an endorsement under the Texas Garage Policy that was not specifically rated on the basis of risk characteristics of the automobile or person driving. As for the limited non-owned auto liability insurance, it had been included within the Texas Business Owners

9

Policy promulgated by TDI. The fact that TDI did not expressly state that it was using the discretion afforded it under article 5.02 does not render either order invalid. We overrule Taylor's fifth issue.

## CONCLUSION

Because the district court appropriately granted State Farm's summary judgment and properly denied Taylor's partial summary judgment, we affirm the judgment.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   October 2, 2003

10